UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| GREGORY T. ARGO, JR., | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| VS. | )    No. 14-3027-JDT-tmp |
| | ) |
| BRYAN BAILEY, ET AL., | ) |
| | ) |
|    Defendants. | ) |

ORDER DENYING REQUEST FOR APPOINTMENT OF COUNSEL,
PARTIALLY DISMISSING COMPLAINT AND DIRECTING THAT
PROCESS BE ISSUED AND SERVED ON THE REMAINING DEFENDANTS

On December 30, 2014, Plaintiff Gregory T. Argo, Jr. ("Argo"), who is confined at the Morgan County Correctional Complex in Wartburg, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion for leave to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) On December 31, 2014, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) The Clerk shall record the Defendants as Correctional Officer Bryan Bailey; Correctional Officer First Name Unknown Johnson; the Tennessee Department of Correction ("TDOC");[1] and James Holloway, Warden of the West Tennessee State Penitentiary ("WTSP").

---

[1] The complaint refers to the TDOC as the Tennessee Department of Corrections, but the correct designation is the Tennessee Department of *Correction*.

I. The Complaint

In his complaint, Argo alleges that, on August 29, 2014, while incarcerated at the WTSP, he was assaulted by Defendant Bailey. (ECF No. 1 at 2.) Argo contends that he was being escorted from the shower in restraints, and when they got back to his cell another inmate gave Argo a note through the door about regarding trading food. (*Id.*) As Argo knelt on his bed in order to have the shackles removed, while still handcuffed, Defendant Bailey allegedly grabbed and twisted his wrist in an attempt to take the note away from him. (*Id.*) When Argo "reacted," Bailey allegedly choked him and threw him onto the bed while screaming at him to stop resisting. (*Id.*) Argo managed to get up and threw the note to the floor, then tried to run to the door so he would be in view of the camera. (*Id.*)

Once he was on his feet, Argo further alleges that "Officer Bailey" forcibly held Argo to the wall while "C.O. Bailey" struck him with a closed fist and choked him.[2] (*Id.* at 3.) Alerted by calls from other inmates, other officers, who are not parties to this lawsuit, came to Argo's cell and sent Defendant Bailey out while they removed Argo's ankle restraints. (*Id.*) The note was retrieved from the floor, and the tray flap was opened to remove Argo's cuffs. (*Id.*) Argo states that he was angry after being beaten so after his right cuff was removed, he stuck his left arm out of the tray flap in order to keep it from closing. Defendant Bailey then grabbed the loose side of the cuff, placed his foot

---

[2] Argo's complaint states that "Officer Bailey" forced him to the wall and held him while "C.O. Bailey" attacked him. It appears likely that Argo intended to say that either Bailey held him to the wall while Defendant Johnson attacked him, or vice versa. As both are plausible, the exact role each Defendant allegedly played in the attack is unclear.

2

on the door, and jerked Argo's left arm out of the flap causing harm to Argo's wrist, all while shouting derogatory remarks at Argo. (*Id.*)

Argo further alleges that he requested medical attention, but it took six hours for him to be taken to the medical department. (*Id.* at 4.) Once he was taken to medical, Argo's injuries were documented. He alleges that he had hand prints on his throat, "a very large red 'raspberry' on [his] left arm," several scratches on his arms, severe bruises and red marks from the cuffs on both wrists, and knuckle marks on his left rib cage and back from being punched. (*Id.*) Argo contends that because he made an issue of his injuries, he was falsely written up for reaching through the arm flap and attempting to pull Defendant Bailey through causing a scratch to Bailey's finger. (*Id.*) Argo alleges that he was told to plead guilty to the write-up or he would be placed on maximum security. (*Id.*)

Argo seeks suspension and termination of Defendants Bailey and Johnson, the appointment of counsel, and monetary compensation. (*Id.* at 5.)

## II. Appointment of Counsel

Pursuant to 28 U.S.C. § 1915(e)(1), the "court may request an attorney to represent any such person unable to employ counsel." However, "[t]here is no constitutional or . . . statutory right to counsel in federal civil cases." *Farmer v. Haas*, 990 F.2d 319, 323 (7th Cir. 1993), and "§ 1915[(e)(1)] does not authorize the federal courts to make coercive appointments of counsel" to represent indigent civil litigants, *Mallard v. United States Dist. Court*, 490 U.S. 296, 310 (1989). Generally, a court will only appoint counsel in exceptional circumstances. *Willett v. Wells*, 469 F. Supp. 748,

751 (E.D. Tenn. 1977). Although "no comprehensive definition of exceptional circumstances is practical," *Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982), courts resolve this issue through a fact-specific inquiry. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). Examining the pleadings and documents in the file, the Court analyzes the merits of the claims, the complexity of the case, the *pro se* litigant's prior efforts to retain counsel, and his ability to present the claims. *Henry v. City of Detroit Manpower Dep't*, 763 F.2d 757, 760 (6th Cir. 1985); *Wiggins v. Sargent*, 753 F.2d 663, 668 (8th Cir. 1985).

As a general rule, counsel should be appointed in civil cases only if a litigant has made "a threshold showing of some likelihood of merit." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir. 1989). Because Argo has not met the threshold showing of a likelihood of success, the request for appointment of counsel is DENIED.

### III. Analysis

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

    (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

    (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Federal Rules of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic*

4

*Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Argo*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Argo v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

Argo filed his complaint on the court-supplied form for actions under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

The complaint contains no factual allegations against Defendant Holloway. When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Furthermore, Holloway cannot be held liable merely because of his position as Warden of the WTSP. Under 42 U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant,

through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his or her subordinates, but fails to act, generally cannot be held liable in his or her individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). The complaint contains no allegations demonstrating that Defendant Holloway authorized, approved or acquiesced in the actions of Defendants Bailey or Johnson.

Argo's claims against the TDOC are, in effect, asserted against the State of Tennessee. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984). The TDOC is an agency of the State of Tennessee. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468,

472 (1987); *Pennhurst State*, 465 U.S. at 100; *Employees of Dep't of Pub. Health & Welfare v. Mo. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973); *see also Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). By its terms, the Eleventh Amendment bars all suits, regardless of the relief sought. *Pennhurst*, 465 U.S. at 100-01. Tennessee has not waived its sovereign immunity. Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Argo complains that he was assaulted by Defendants Bailey and Johnson. (ECF No. 1 at 4.) For a convicted prisoner such as Plaintiff, such claims arise under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). Where an inmate challenges a use of force by prison guards, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal quotation marks omitted); *see also Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010) (per curiam) ("The 'core judicial inquiry' [for an excessive force claim] was not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to restore discipline,

9

or maliciously and sadistically to cause harm." (internal quotation marks omitted)). A significant physical injury is not required to establish the objective component of an Eighth Amendment claim. *Wilkins*, 559 U.S. at 1178-79 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."); *Hudson v. McMillian*, 503 U.S. 1, 7-9 (1992) (same).

For purposes of screening, the Court concludes that Argo has alleged a plausible claim for excessive force in violation of the Eighth Amendment against Defendants Bailey and Johnson.

IV.  Conclusion

The Court DISMISSES Argo's claims against Defendants Holloway and the TDOC for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Process will be issued for Defendants Bailey and Johnson on Argo's Eighth Amendment claim for the use of excessive force.

It is ORDERED that the Clerk shall issue process for Defendants Bailey and Johnson and deliver that process to the U.S. Marshal for service. Service shall be made on Defendants Bailey and Johnson pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10), either by mail or personally if mail service is not effective. All costs of service shall by advanced by the United States.

It is further ORDERED that Argo shall serve a copy of every subsequent document he files in this cause on the attorneys for Defendants Bailey and Johnson or on any unrepresented Defendant. Argo shall make a certificate of service on every

document filed. Argo shall familiarize himself with Federal Rules of Civil Procedure and this Court's Local Rules.[3]

Argo shall promptly notify the Clerk of any change of address or extended absence. Failure to comply with these requirements, or any other order of the Court may result in the dismissal of this case without further notice.

IT IS SO ORDERED.

                                 s/ **James D. Todd**
                                 JAMES D. TODD
                                 UNITED STATES DISTRICT JUDGE

---

[3] A copy of the Local Rules may be obtained from the Clerk. The Local Rules are also available on the Court's website at www.tnwd.courts.gov/pdf/content/LocalRules.pdf.